UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **BELETA POWELL** | **CIVIL ACTION NO. 5:14-CV-332-KKC** |
|     Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN,** **Acting Commissioner of Social Security,** | |
|     Defendant. | |

The plaintiff Beleta Powell brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

An Administrative Law Judge ("ALJ") denied Powell's claim (Administrative Record ("AR") at 17) and Powell now asks this Court to review that decision. This Court's review of the decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009).

In denying Powell's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that the claimant did not engage in substantial gainful activity from the alleged onset date of May 15, 2006 to the date last insured of December 31, 2011. (AR at 19).

At step two, the ALJ determined that Powell suffers from the following severe impairments: fibromyalgia/arthralgia; degenerative disc disease of the cervical and lumbar spine; capsulitis of the shoulder; and depression. (AR at 19.)

At step three, the ALJ found that, through the date last insured, Powell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR at 19.)

The ALJ determined that, through the date last insured, Powell had the residual functional capacity (RFC) to perform a limited range of "light" work as defined by 20 C.F.R. § 404.1567(b). The ALJ determined that Powell had the following limitations:

> no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day and for no more than 30 minutes at one time; no sitting more than six hours of an eight-hour day and for no more than 1 hour at one time; can do no more than occasional pushing/pulling up to the exertional limitations; no reaching above shoulder height bilaterally; no more than occasional balancing, stooping, or climbing ramps or stairs, but kneeling, crouching, crawling, no climbing ladders, ropes, or scaffolds; no work around dangerous moving machinery or unprotected heights; no work in areas of concentrated vibration; no more than simple, routine work; no more than occasional public contact or occasional interaction with co-workers or supervisors; and no more than occasional changes in the work setting.

(AR at 21.)

At step four, the ALJ found that, through the date last insured, Powell was unable to perform any past relevant work. (AR at 24.)

At step five, the ALJ determined that, through the date last insured and given the described RFC, Powell could have performed jobs that existed in significant numbers in the national economy and, thus, she was not disabled. (AR at 25.)

## ANALYSIS

Powell first argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Tabitha Culver. Dr. Culver opined that Powell is incapable of performing even "low stress" jobs.

ALJs must "evaluate every medical opinion [they] receive" about a claimant and give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c), (c)(2). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id*.

The ALJ gave Dr. Culver's opinion "little weight" but he gave good reasons for doing so. As noted by the ALJ, Dr. Culver saw Powell only a total of three times over a three-month period. (AR at 23, 410, 414, 418.) The third visit was specifically to "complete paperwork for disability." (AR at 418.) The ALJ reasonably gave Dr. Culver's opinion less weight based on the number of visits and the length of the relationship. 20 C.F.R. § 404.1527(c)(2)(i). Furthermore, all of Powell's visits with Dr. Culver came in 2012, after the December 31, 2011 date she was last insured. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (finding that treating physician's opinion was "minimally probative" of claimant's condition prior to expiration of his insured status where physician saw claimant only after expiration of insured status).

Further, the ALJ pointed out that the sole reason given by Dr. Culver for concluding that Powell is incapable of even low stress jobs is that Powell herself reported that she was "doing good" to take care of herself. (AR at 424.) The ALJ reasonably rejected Dr. Culver's conclusion

3

because it relied on Powell's subjective complaints and not on "clinically observed signs or test results." (AR at 23.)

Dr. Culver further opined that Powell could not sit or stand for more than 10 minutes at one time and that she could only sit or stand for two hours in an eight-hour day. (AR at 424-25.) Dr. Culver opined that Powell would have to walk about every 15 minutes for 10 minutes. (AR at 425.) She opined that Powell would have to miss more than four days of work each month. (AR at 426.)

The ALJ found these conclusions inconsistent with the activities that Powell herself described. (AR at 23.) Powell reported to the SSA that she was able to do laundry, "pick up around the house," unload the dishwasher, cook simple meals daily, dust, and take care of the pets. (AR at 204.) At the hearing, Powell testified that she cared for her seven-year-old grandson two or three days a week for anywhere from a couple of hours to overnight. (AR at 39.) She testified that she was able to do light vacuuming. (AR at 70.)

Further, the ALJ noted that Powell was able to sit throughout almost all of the administrative hearing which lasted a little more than an hour. She arose only after the ALJ asked her how long she believed she had been sitting that day. (AR at 65, 74.) She testified that, during the relevant time period, she was able to drive to and from her doctor's office covering a total of 40 miles. (AR at 66.)  As to Dr. Culver's conclusion that Powell would have to miss more than four days of work each month, the ALJ noted that Dr. Culver provided no basis for that conclusion.

Powell argues that objective medical evidence supports that she has shoulder, neck, and back pain. She points to MRIs dated September 20, 2011 and July 12, 2013. These reports indicate only that Powell reported that she suffered shoulder, neck, and back pain. Powell points to no medical information in the reports that supports the degree of pain that Powell alleges she

4

suffered during the relevant time period. As the ALJ noted, the September 20, 2011 X-rays showed some degenerative disc disease of the cervical and lumbosacral spine but with only "mild diffuse bulging" (AR at 388) and "minimal narrowing and desiccation" of the discs. (AR at 436.) The MRIs showed only "mild L4-L5 facet joint arthritis." (AR at 436.)  The July 12, 2013 MRI of Powell's left shoulder was conducted after the date last insured and showed that "soft tissues are normal" and "no acute osseous abnormality" of either shoulder.  (AR at 448.)

Powell also points to the opinion of consultative examiner Dr. James Owen who opined that Powell would have "severe difficulty lifting, handling, carrying objects."  (AR at 342.)  The ALJ noted, however, that the state agency reviewing physician relied on Dr. Owens' report in concluding that she could perform "light exertional work."  (AR at 92-105.) He found this conclusion consistent with Powell's reported activities especially with her reported ability to operate and handle a hand-held vacuum. Further, as the ALJ noted, he did include limitations on lifting and carrying in Powell's RFC that were consistent with Dr. Owens' report.  (AR at 24.)

Powell next argues that the ALJ failed to consider the combined effects of all of Powell's impairments. The only impairment that Powell specifically states that the ALJ failed to consider was her depression.  In his ruling, however, the ALJ explicitly discussed Powell's depression. He noted that Dr. Owens diagnosed the depression as under "fair control."  (AR at 342.)  Further, the RFC limited Powell to "no more than simple, routine work; no more than occasional public contact or occasional interaction with co-workers or supervisors; and no more than occasional changes in the work setting."  (AR at 21.)

For all these reasons, **IT IS HEREBY ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 10) is **DENIED**;
2. The defendant's motion for summary judgment (DE 111) is **GRANTED**;

5

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated September 10, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY